IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARIA STOFKO,

                      Plaintiff,                          CV-06-321-ST

        v.                                      OPINION AND ORDER

HOME DEPOT U.S.A., INC., a Delaware
Corporation,

                      Defendant.               

STEWART, Magistrate Judge:

**<u>INTRODUCTION</u>**

Plaintiff, Maria Stofko ("Stofko"), an Oregon resident, filed this action on February 6,

2006, in the Washington County Circuit Court for the State of Oregon, alleging a negligence

claim against defendant, Home Depot U.S.A., Inc. ("Home Depot"), a national retail chain, for

injuries sustained when struck by a car while walking in front of Home Depot's store in

Hillsboro, Oregon.  Home Depot removed the case to this court on March 9, 2006, pursuant to 28

USC § 1441(b).

This court has diversity jurisdiction over the negligence claim under 28 USC § 1332. Both parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

Home Depot has now filed a Motion for Summary Judgment (docket # 38). For the reasons that follow, that motion is granted as to the specification of negligence regarding a failure to warn and is otherwise denied.

## FACTS

On April 15, 2004, at approximately 12:00 pm, Stofko and her husband traveled to the Home Depot store in Hillsboro, Oregon, to rent equipment. Stofko's husband dropped her off to enter the tool rental access point while he parked their vehicle. Because the tool rental store was not open, the Stofkos proceeded to the nearest store entrance in the loading zone.

The loading zone is a covered area along the front of the store consisting of a one-way lane for vehicular traffic running parallel to 12 foot wide customer pick-up zone[1] next to the store. The customer pick-up zone is marked by four inch wide diagonal yellow chevron lines spaced two feet apart. The outer three feet of the 12 foot yellow striped area adjoining the traffic lane also contains a cross-hatched tactile warning stripe for the visually impaired.

As the Stofkos walked within the loading zone toward the main entrance, Rogelio Ramirez-Herrera ("Ramirez-Herrera") was sitting in his vehicle in the traffic lane. Ramirez-Herrera is paralyzed from the waist down and his vehicle was equipped with a hand control lever he used to brake and accelerate the vehicle. To stow his wheelchair, Ramirez-Herrera moved the wheelchair over the steering wheel, striking the shifter and causing the vehicle's transmission to

---

[1] This is the description used by the store plans examiner for the City of Hillsboro. Although Home Depot refers to this area as a pedestrian zone, it has submitted no evidence that it intended this area to be designated only for pedestrians.

shift into "drive" and the vehicle to move forward.  When his vehicle moved forward, Ramirez-Herrera pushed the hand control lever in an attempt to brake, but pushed it in the wrong direction, causing the vehicle to accelerate.  As his vehicle accelerated, it veered from the traffic lane into the area yellow striped area, striking and injuring Stofko.

## LEGAL STANDARDS

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law."  The moving party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing FRCP 56(e).  The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial."  *Balint v. Carson City*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987).  The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party."  *Id* (citation omitted).

///

## DISCUSSION

Stofko alleges that Home Depot knew or should have known that "the risk of injury to pedestrian invitees traversing into and out of its store was high due to the close proximity to which pedestrians and vehicles move throughout defendant's parking lot and premises . . . [and] due to its policy or acceptance of customers driving up to the front of its store to load purchased items into their vehicles."  Complaint, ¶¶ 6-7.  She specifically alleges that Home Depot was negligent in that it:

> a) failed to implement or maintain reasonable protective measures
> to prevent injuries to pedestrians arising from vehicular traffic;
> b)  failed to warn its patrons of the dangers of vehicular traffic on the
> premises;
> c) failed to control or protect its invitees from vehicular traffic;
> d) failed to design its premises in a manner which protected pedestrians
> from vehicular traffic on defendant's premises; and/or
> e) failed to provide adequate reasonable protected walkways of ingress
> and egress for pedestrian traffic.

*Id*, ¶ 9.

The parties agree that Stofko was an "invitee" and Home Depot was the "possessor of land" at the time of the accident.  An invitee is "one who comes on the premises on business that concerns the occupier, with the occupier's express or implied invitation."  *Glorioso v. Ness*, 191 Or App 637, 640, 83 P3d 914, 915, *review denied*, 336 Or 657, 92 P3d 122 (2004).  Land owners owe invitees a heightened duty of care because of their special relationship:

> In general, it is the duty of the possessor of land to make the premises
> reasonably safe for the invitee's visit.  The possessor must exercise [due
> care] to discover conditions of the premises that create an unreasonable
> risk of harm to the invitee.  The possessor must exercise that standard of
> care either to eliminate the condition creating that risk or to warn any
> foreseeable invitee of the risk so as to enable the invitee to avoid the harm.

*Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d 144, 150 (1984) (*en banc*).

"Accordingly, property owners are liable to invitees only for conditions that create an unreasonable risk of harm to the invitee." *Glorioso*, 191 Or App at 643, 83 P3d at 917 (citation omitted). A condition is only considered an unreasonable risk of harm to an invitee "when it cannot be encountered with reasonable safety even if the danger is known and appreciated." *Jensen v. Kacy's Markets, Inc.*, 91 Or App 285, 289, 754 P2d 624, 626, *review denied*, 306 Or 413, 761 P2d 531 (1988).

Home Depot seeks summary judgment on the basis that the loading area posed no unreasonable risk to invitees and that even if it did, Stofko was aware of the risk and entitled to no warning.

## I.    <u>Unreasonable Risk of Harm</u>

Initially the parties disagree as to whether the existence of an unreasonable risk of harm to invitees is a question of law or fact.

Stofko relies on three "slip and fall" cases for the proposition that, in general, Oregon courts defer to the jury to decide whether a condition is unreasonably dangerous. *Pribble v. Safeway Stores, Inc.*, 249 Or 184, 191, 437 P2d 745, 749 (1968) (*en banc*) held that the danger of a slippery entrance into a store (from rain trekked in by customers) can be unreasonably dangerous because it "is entirely different than" conditions recognized as not unreasonably dangerous, such as a flight of ordinary stairs in a usual place in the daylight or an ordinary curbing along a sidewalk. In *Bertrand v. Palm Springs and European Health Spa, Inc.*, 257 Or 532, 536, 480 P2d 424, 426 (1971), a customer was injured in a fall when she noticed and tried to tiptoe around puddles of water on the floor of the locker room. Citing *Pribble*, the court sent the question of unreasonableness of the risk of harm to the jury without further explanation. In

*Katter v. Jack's Datsun Sales, Inc.*, 279 Or 161, 566 P2d 509 (1977), the plaintiff fell and broke

his leg because of the alleged dangerous condition of the walkway into the defendant's premises.

The court held that whether "the defendant [should] have realized that the obstruction involved

an unreasonable risk of harm to the plaintiff" is "strictly a jury question" because it could not

"say as a matter of law that the risk of harm in this case was greater or less than the situations in

[other cited cases]." *Id*, 279 Or at 168, 566 P2d at 513 (citation omitted). The court added that a

"case should be taken from the jury only when the facts are such that only one conclusion can be

drawn from them." *Id*.

These cases do not mandate that only a jury can decide whether a condition poses an

unreasonable risk of harm. Instead, they stand for the proposition that courts decide the issue as

a matter of law only if no reasonable finder of fact could find the condition posed an

unreasonable risk of harm. Thus, this court must ascertain whether, under the factual

circumstances in this case and viewing the record most favorably to Stofko, a reasonable finder

of fact could conclude that the loading zone presented an unreasonable risk of harm to invitees.

Home Depot argues that the likelihood of harm occurring to invitees in its loading area is

remote at best because: (1) both pedestrians and drivers know and understand the risk and keep a

lookout to avoid each other; (2) the loading zone is wide enough for pedestrians to walk on the

12 foot wide yellow striped area away from vehicles which travel in their own one-way lane;

(3) the design of the loading zone was approved by the City of Hillsboro and complied with all

applicable building codes, both when the store was built and as of March 2007; and (4) the sole

reason the accident occurred was because Ramirez-Herrera lost control of his vehicle and drove

into the yellow striped area. It likens the risk to pedestrians in its loading zone as no more than

pedestrians normally encounter when crossing a frontage road between the parking area and the entrance of any retail store. Absent a history of problems with vehicles striking pedestrians in the loading zone, Home Depot contends that one accident by an errant car does not evidence an unreasonable risk of harm.

Stofko responds in part by pointing to *Robison v. Six Flags Theme Parks, Inc.*, 64 Cal App 4th 1294 (1998). In that case, a picnic table area was placed at the end of a parking lot at a theme park, such that cars running the stop sign could drive into the picnic area. A developmentally disabled woman was at the wheel of a car that her companion was helping to start when she lost control, drove through the stop sign and collided with plaintiff at a picnic table. The court found that by designing the parking lot and picnic area in such proximity and at that angle, the park had actual knowledge of such incidents as foreseeable, requiring it to take reasonable protective measures. A car traveling at the regular speed would cover the distance in less than 2 seconds, "too short a time to allow for reliable evasive action by an unsuspecting person seated at a picnic table, possibly with his or her back to the oncoming car. When such an observable danger ripens into an accident, the accident is foreseeable for purposes of duty analysis." *Id*, 64 Cal App 4th at 1301. Similarly, Stofko contends that Home Depot owes a duty to protect pedestrian invitees from being hit by an errant car in the loading zone as a result of the loading zone's unreasonably dangerous design.

*Robinson* provides little guidance here because California law follows a foreseeability analysis, unlike Oregon law which analyses whether the premises present an unreasonable risk of harm to the invitee. Foreseeability is embedded in deciding whether the risk of harm is unreasonable. However, Oregon requires more than just foreseeability. *Robinson* involved a

conflict point based on the design of a heavily traveled 25 mph traffic access traffic lane for a theme park which was directed straight at a picnic area. In contrast, the yellow striped area and the traffic lane of Home Depot's loading zone are parallel, rather than perpendicular, to each other.

Stofko also relies on the conclusions of her expert, John E. Pflum, P.E. ("Pflum"), that the activity and characteristics of the loading area present a "risk of serious injury" to pedestrians. Declaration of Jack Pflum, Exhibit 1, p. 7. Pflum states that it is an area of "high activity" involving "vehicular movement, parking and unparking of vehicles, loading and unloading of material, movement of fork lifts, and ingress/egress by pedestrian customers" in both the traffic lane and yellow striped area. *Id*, ¶¶ 5-6 & Exhibit 1, p. 6. The loading zone presents multiple points of conflict between pedestrians and vehicles. *Id*, Exhibit 1, pp. 4 & 7. He also notes that the yellow striped area "causes more confusion than help in creating a safety [*sic*] environment since it does not provide a clear message to pedestrians or drivers." *Id* at 7. Although he opines that "this area should be given special design attention in order to promote the safety of pedestrians and customers," Home Depot failed to conduct a proper safety study. *Id* at 6, 7. It installed steel post bollards adjacent to the building which protect the building from vehicles, but provide no "in kind protection for pedestrians." *Id* at 6. As a result, he concludes that the loading area "is critically deficient in safety prevention and mitigation design elements, such as signs, guard rails, and crosswalks." *Id*. Noting that "there are multiple design solutions available for overall safety considerations," Pflum describes three simple and low cost options: installing bollards, a raised sidewalk or a guardrail between the traffic lane and the yellow striped area. *Id* at 6-7.

8 - OPINION AND ORDER

Home Depot attacks Pflum's opinion as confusing, misleading and irrelevant because it ignores the cause of Stofko's accident which was not due to any confusing design, high activity or multiple conflict points. Ramirez-Herrera did not drive out of the vehicle traffic lane and into the yellow striped area because he was confused about the markings, but only because he lost control of his vehicle. Stofko also was not confused by any markings since she was in the yellow striped area, rather than the traffic lane, when the accident occurred. In addition, Home Depot points out that the accident did not occur within any conflict point where the paths of pedestrians and vehicles intersect. Stofko was walking to the side of, and not in the path of, the vehicle of Ramirez-Herrera in the traffic lane. Home Depot also contends that Stofko has presented no evidence of high activity in the loading zone at the time of the accident. In fact, the surveillance tape shows a low level of vehicle activity at the loading zone at the time of the accident. Furthermore, if an area of high activity constituted, by itself, a risk of unreasonable harm, parking lots adjoining every large store in the country would present an unreasonable risk of harm to invitees. Home Depot also contends that Stofko offered no evidence that the lack of bollards, a raised sidewalk, or a guardrail created an unreasonable risk of harm of the type that befell Stofko.

However, Pflum points out that Home Depot knew or should have known that due to its high activity, multiple points of conflict, and confusing markings, the loading zone in general presents a safety hazard to pedestrians from vehicles. With that knowledge, it could have designed the loading zone differently to avoid any contact between vehicles and pedestrians, not only during times of high activity and at conflict points, but also for such foreseeable, but unusual, accidents as this one. This accident would not have happened had Home Depot

installed any of the three recommended options or had moved the loading zone to the rear or side of the store away from a point of ingress/egress to the store for pedestrians. Although Pflum does not expressly state that potential contact between vehicles and pedestrians in the loading zone presents an unreasonable risk of harm, his opinion allows a reasonable fact-finder to reach that conclusion due to the high activity, multiple points of contact, and confusing markings. Although this is a close case, this court concludes that Stofko has submitted sufficient evidence to allow a jury to decide whether the design of Home Depot's loading zone failed to adequately protect the pedestrians from risk of injury by vehicular traffic.

## II.    Failure to Warn

Should this court find sufficient evidence of an unreasonable risk of harm to proceed to trial, Stofko alleges that Home Depot had a duty to warn invitees of the risk and failed to do so. Home Depot responds that any risk was known and understood by Stofko. Indeed, Stofko testified in her deposition that she knew vehicles drove into and out of the loading zone and that she should watch for them or risk getting injured, that she did not need Home Depot to post a warning sign for pedestrians to watch out for vehicles, and that prior to the accident she had visited other stores in which she had to walk in traffic lanes and had to walk across a roadway that traversed the front of the stores.

Under *Garrison v. Deschutes Co.*, 334 Or 264, 278, 48 P3d 807, 815 (2002), the issue is whether a causal link exists between Home Depot's failure to post a warning and the invitee's injuries. There the court found that no causal link existed between the lack of warning and the injuries because plaintiffs were fully aware of the danger represented by the condition (a drop off and lack of barrier at the edge of a platform). They testified that they had used the facility

before, knew and had always been concerned about the drop-off and the lack of a protective

barrier, and had discussed the importance of being careful not to fall.  Given that testimony, the

court concluded that no reasonable juror could find that a warning would have made a

difference.

Stofko admits she was aware that she needed to watch out for cars and did not require

Home Depot to warn her about this, although she believes a sign would have added to the safety

of others.  This negates any causal link between the lack of a warning and Stofko's injuries.

Therefore, that portion of the negligence claim based on Home Depot's failure to warn invitees

of the dangers of vehicular traffic (Complaint, ¶ 9(b)) is dismissed.

## **ORDER**

For the reasons set forth above, Home Depot's Motion for Summary Judgment (docket

# 38) is GRANTED as to the failure-to-warn specification of negligence and otherwise

DENIED.

DATED this 7th day of May, 2007.

/s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

11 - OPINION AND ORDER